UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SAMUEL WADE HOWARD,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,[1]<br><br>    Defendant. | No. CV-11-05140-CI<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. ECF No. 16, 20. Attorney Thomas Bothwell represents Samuel W. Howard (Plaintiff); Special Assistant United States Attorney M. Thayne Warner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

On July 16, 2008, Plaintiff protectively filed an application

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

for both supplemental security income and for disability insurance benefits, alleging disability beginning July 16, 2008. Tr. 11; 179. Plaintiff previously applied for supplemental security income alleging an onset date of January 1, 2004. Tr. 82. That application was denied May 30, 2008. Tr. 180. In his current application for benefits, Plaintiff reported that he stopped working due to bipolar disorder, problems with both knees, pain in his right ankle, left arm, shoulders and neck, Hepatitis C and mental health problems. Tr. 171. Plaintiff's claim was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ). Tr. 79-120. A hearing was held on August 2, 2010, at which medical expert Anthony Francis, M.D., and Marian Martin, Ph.D., and Plaintiff, who was represented by counsel, testified. Tr. 38-78. ALJ R.J. Payne presided. Tr. 38. The ALJ denied benefits on August 27, 2010. Tr. 11-19. Plaintiff sought review with the Appeals Council, which denied review. Tr. 1-3. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 49 years old, and living alone in a camper parked on his aunt's property. Tr. 66. Plaintiff dropped out of school in the ninth grade, and obtained his GED while in prison. Tr. 67. He was convicted of burglary and later, first degree child molestation. Tr. 68. He was married once, and had one son he gave up for adoption. Tr. 241.

Plaintiff has worked as a house painter. Tr. 59. He said he was fired from his painting job because he kept forgetting things,

and he also said he was fired because he was taking drugs at the time. Tr. 374; 377. He testified that he has not been able to find work, and he feels tired all the time. Tr. 59. He attributes his weariness to his Hepatitis C and the medications he takes for his impairments. Tr. 60.

Plaintiff prepares his own meals and shops, and Plaintiff's cousin helps him keep the trailer clean. Tr. 75. Plaintiff testified that he attends church, AA and NA meetings, and goes fishing a couple of times per week. Tr. 75. Plaintiff testified that he smokes a pack of cigarettes per day, he does not drink alcohol, and he smokes marijuana periodically for pain. Tr. 67; 72.

## ADMINISTRATIVE DECISION

At step one, ALJ Payne found Plaintiff had not engaged in substantial gainful activity since July 16, 2008, the alleged onset date. Tr. 13. At step two, he found Plaintiff had the following severe impairments: a depressive disorder and/or bipolar disorder; an anxiety disorder; an antisocial personality disorder; and a history of polysubstance abuse. Tr. 13. At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). Tr. 15. The ALJ found Plaintiff has the Residual Functional Capacity ("RFC") to perform,

> [A] wide range of light work . . . with moderate limitations for understanding, remembering and carrying out detailed instructions, and for accepting instructions and responding to criticism from supervisors.

Tr. 16.

In his step four findings, the ALJ found Plaintiff's statements

regarding pain and limitations were not credible to the extent they were inconsistent with the RFC findings.  Tr. 18.  The ALJ found that Plaintiff was unable to perform past relevant work, but after considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the Plaintiff can perform.  Tr. 18-19.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

Plaintiff contends that the ALJ erred by (1) finding Plaintiff

not credible; (2) failing to find at step two that Plaintiff had severe physical impairments related to his neck, back and knees; (3) improperly rejecting the opinions of Plaintiff's treating and examining doctors; and (4) failing to meet his burden at step five to identify specific jobs available in significant numbers that Plaintiff could perform. ECF No. 17 at 11.

**A.  Credibility**

Plaintiff complains that the ALJ failed to provide "clear and convincing" reasons for rejecting his subjective complaints. He further alleges that the ALJ failed to specify the testimony that was not credible, and he failed to identify the evidence that undermined Plaintiff's testimony. Finally, Plaintiff argues that the ALJ's sole reliance upon Plaintiff's ability to perform daily tasks to determine his credibility was improper. ECF No. 17 at 18.

To determine whether the claimant's testimony regarding the severity of symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater,* 80 F.3d 1273,1284 (9th Cir. 1996). Absent affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving "clear and convincing" reasons. *Smolen*, 80 F.3d at 1283-84. "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1995). The fact that

a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it. See *Smolen,* 80 F.3d at 1285. If the ALJ's credibility finding is supported by substantial evidence in the record, "the court may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)("credibility determinations are the province of the ALJ").

Contrary to Plaintiff's assertions, the ALJ provided several reasons in addition to the activities of daily living that supported the finding that Plaintiff's testimony about the severity of his impairments was not credible. For example, the ALJ identified the contradiction between Plaintiff's testimony that his depression persisted despite medication, and the medical records reflecting his self-reports that medication improved his symptoms. Tr. 18. As the ALJ noted, the record reveals Plaintiff repeatedly reported to physicians that his mental impairments are improved when he regularly takes prescribed medication. Tr. 17; 238-39; 271; 303; 328; 380. Symptoms effectively controlled by medication are not disabling. *Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Inconsistent statements diminish a claimant's credibility. See *Thomas*, 278 F.3d at 958-959.

Additionally, the ALJ noted the inconsistency between Plaintiff's initial complaint that his fractured ankle was the cause of his disability, and his later abandonment of that claim, and instead the substitution of mental impairments as the primary basis of his disability claim. Tr. 17. Also, the ALJ recognized Plaintiff admitted to one medical provider that he was experiencing

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

trouble finding work because of his criminal convictions. Tr. 17; 238. Finally, the ALJ found that Plaintiff's activities of daily living including his ability to camp, visit friends, fish and help his brother maintain a residence all supported the finding he was not disabled by his mental impairments. Tr. 17-18; 74-77.

Because the record supports the ALJ's specific findings related to Plaintiff's credibility, and because the reasons are clear and convincing, the ALJ's credibility determination will not be disturbed.

**B.   Step Two**

Plaintiff contends that the ALJ erred by rejecting his physical impairments at step two. Specifically, Plaintiff argues that his physical impairments cause significant limitations in his ability to function. For example, Plaintiff contends that he can stand for only fifteen to twenty minutes before he needs to sit, he cannot stand for more than four hours due to constant pain, and he has to lie down and rest every day to get relief from pain. ECF No. 17 at 14. Defendant responds Plaintiff waived this issue by stipulating at the administrative hearing that he had no physical impairments. ECF No. 21 at 11. At the hearing, Plaintiff's counsel asserted that Plaintiff had established he met or equaled Listing 12.04, or 12.06:

> ALJ: All right. Are you alleging any listings have been met or equaled in this case, or are you going for Step 5?
>
> ATTY: Your Honor, based upon the, the, all these mental health evaluations, yeah, we think that 12.04 and or 12.06 is met or equaled.
>
> ALJ:   How about, on the physical side?
>
> ATTY:   No, Your Honor.
>
> ALJ:   Would you stipulate to that?
>
> ATTY:   Yes, sir.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

Tr. 77.

Appellants must raise issues at their administrative hearings to preserve them on appeal. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *Avol v. Secretary of Health & Human Serv.*, 883 F.2d 659, 660 (9th Cir. 1989). In this case, Plaintiff informed the ALJ that he would stipulate that Plaintiff had no physical impairments. As a result, Plaintiff explicitly waived the issue at the administrative hearing, and he has failed to preserve the issue for appeal.

**C.  Medical Opinions**[2]

Plaintiff argues that the ALJ improperly rejected the opinions of his treating and examining doctors who assessed Plaintiff with marked or moderate limits in his ability to tolerate the pressures of work, the ability to cooperate with others, and in the ability to make decisions and exercise judgment. ECF No. 17 at 16.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews*, 53 F.3d at 1043. If the medical evidence in the record is not

---

[2]The ALJ may apply *res judicata* to bar reconsideration of a period with respect to which he or she has already made a determination, by declining to reopen the prior application. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). In this case, the ALJ did not explicitly indicate if he was reopening the case or if he was applying *res judicata*. Because the ALJ considered medical evidence from as early as 2005, the court reviews the same evidence in the record. See Tr. 13-14.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999). It is also the ALJ's responsibility to determine whether or not inconsistencies in the medical evidence are material and whether certain factors are relevant to discount the opinions of medical experts. *Morgan*, 169 F.3d at 603.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester,* 81 F.3d at 830. Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). While an ALJ need not discuss all evidence presented, the ALJ must explain why significant probative evidence has been rejected. *Vincent on behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

In this case, the ALJ reviewed Plaintiff's medical reports from 2005 through 2009. Tr. 13-15. The ALJ did not explain how the medical opinions were weighed in determining Plaintiff's RFC. The ALJ's notation of the medical evidence is cursory. For example, in the context of discussing Plaintiff's credibility, the ALJ notes "it has been indicated by more than one examiner that it was possible

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

his alleged symptoms were amphetamine induced and/or have evolved into a social personality disorder." Tr. 17. In the same credibility analysis, the ALJ also mentioned a 2008 consultative exam wherein Plaintiff stated he had problems finding work because he was a convicted child molester, and that his mental evaluation was unremarkable. Tr. 17. After discussing Plaintiff's daily living activities, the ALJ noted – without citation to the record – "He was unimpaired for simple and complex job instructions; maintaining attention and timely completing task; interacting with others/social functioning; and tolerating the pressures of everyday stressors." Tr. 18. Finally, the ALJ provided "[t]reatment records since [sic] clearly show that he has repeatedly reported that medication had been keeping his bipolar disorder under good control/stable." Tr. 18.

The record contains medical provider opinions, that if given weight, would require modification of Plaintiff's RFC. For example, Plaintiff was evaluated on June 23, 2005, by Beal Essink, M.D. Tr. 363-68. Dr. Essink opined that while Plaintiff's depressive and psychotic symptoms could be amphetamine induced, he acknowledged Plaintiff could have an underlying major depressive disorder. Tr. 368. Dr. Essink noted Plaintiff has an extensive legal history, and a history of conduct problems that have "evolved into a antisocial personality disorder." Tr. 368. Dr. Essink predicted Plaintiff's ability to focus and concentrate, and his pace and persistence would be below average. Tr. 368. Dr. Essink also stated that Plaintiff would have a below average ability to follow complex instructions, interact appropriately with others including coworkers and supervisors, and tolerate stress, including work-related stress.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

Tr. 368.

On March 4, 2008, Tony Larsen, DMHP, completed a Psychological/Psychiatric Evaluation and assessed Plaintiff with severe limitations in the ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting, and opined he had marked limitations in his ability to understand, remember and follow complex tasks, learn new tasks, relate appropriately to co-workers and supervisors, interact appropriately in public contacts, and care for self, including personal hygiene and appearance. Tr. 350.

On August 22, 2008, Yosen Liu, M.Ed., LMHC, completed a Psychological/Psychiatric evaluation form. Tr. 318-21. The assessment indicated Plaintiff had marked impairments in depressed mood and in his ability to learn new tasks. Tr. 319-20. Plaintiff also was assessed with multiple moderate limitations including the ability to understand, remember and follow complex instructions, and exercise judgment and make decisions, interact appropriately in public contacts, and in the ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting. Tr. 320.

On October 6, 2008, Eugene Kester, M.D., completed a Mental Residual Functional Capacity Assessment and found Plaintiff had moderate limitations in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to work in coordination with or proximity to others without being distracted by them. Tr. 265. Dr. Kester also found that Plaintiff was moderately limited in his ability to interact appropriately with the general public and in his

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes. Tr. 266. Dr. Kester concluded Plaintiff was "capable of simple and some detailed tasks; limited coworkers and general public contacts." Tr. 267. This MRFC was affirmed by Mary Gentile, Ph.D., on February 17, 2009. Tr. 347.

Also, on November 3, 2008, James Dahlke completed a Physical Residual Functional Capacity Assessment form that indicated Plaintiff could never climb ladder/rope/scaffolds, had limited reaching in all directions, and he should avoid concentrated exposure to hazards such as machinery and heights. Tr. 278-80.

The ALJ failed to address the various opinions and assessments that constituted the medical evidence, and he failed to indicate which opinions were given substantial weight, and which opinions were given little to no weight. When an ALJ's denial of benefits is not supported by the record, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal quotation marks omitted). The court may exercise discretion and direct an award of benefits "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). Remand for further proceedings is appropriate where outstanding issues exist that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. *See Vasquez v. Astrue,* 572 F.3d 586, 593 (9th Cir. 2009); cf. *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998) ("We do not remand this case for further

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

proceedings because it is clear from the administrative record that Claimant is entitled to benefits."). This case must be remanded order for the ALJ to provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725.

**D.   Step Five**

Plaintiff contends that the ALJ erred by finding that jobs exist in significant numbers that Plaintiff can perform. ECF No. 17 at 19-20. This finding was not based on vocational expert testimony, but was instead based on the ALJ's consideration of the Medical-Vocational Guidelines ("the Grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2. *Id*. The Grids:

> "consist of a matrix of [the claimant's residual functional capacity, age, work experience and education] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461-62, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983). When the grids match the claimant's qualifications, "the guidelines direct a conclusion as to whether work exists that the claimant could perform." Id. at 462. When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, see SSR 83-14, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations. *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988).

*Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (internal parallel citations omitted).

Plaintiff's arguments under this issue assume that the ALJ erred at earlier steps in the disability determination process: if the ALJ erred in finding Plaintiff's impairments were not severe

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

1  enough to preclude all work, and instead only mildly or moderately
2  impaired his ability to work, the ALJ would have been precluded from
3  relying on the Grids.  See *Hoopai*, 499 F.3d at 1077 ("We have not
4  previously held mild or moderate depression to be a sufficiently
5  severe non-exertional limitation that significantly limits a
6  claimant's ability to do work beyond the exertional limitation.").
7  On remand, after revisiting the medical records, the ALJ will
8  conduct new step four and step five analyses.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error.  On remand, the ALJ shall reevaluate the opinions of the medical source opinions, explain the weight given to medical sources and, if necessary, provide legally sufficient reasons for rejecting medical source opinions. Additionally, the ALJ will reevaluate his determination at step four and step five.  The decision is therefore **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion. Accordingly,

**IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED** and the matter is **REMANDED** to the Commissioner for additional proceedings.

2.  Defendant's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**;

3.  An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

```
 1  provide a copy to counsel for Plaintiff and Defendant. Judgment
 2  shall be entered for Plaintiff, and the file shall be **CLOSED**.
 3       DATED April 18, 2013.
 4
 5                    S/ CYNTHIA IMBROGNO
                   UNITED STATES MAGISTRATE JUDGE
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```